E-FILED
Monday, 09 September, 2013 02:17:57 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | | |
|---|---|---|
| KEOKUK JUNCTION RAILWAY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 11-1139 |
| TOLEDO, PEORIA & WESTERN RAILWAY CORP., et al., | ) ) ) | |
| Defendants. | ) ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before this Court for a Report and Recommendation on Defendant Toledo, Peoria & Western Railway Corp.'s (TP&W) Motion to Dismiss Counts IV Through XII of Plaintiff's First Amended Complaint (d/e 38) (Motion 38); Defendant San Pedro Trails, Inc.'s Motion to Dismiss Counts IV and V of Plaintiff's First Amended Complaint (d/e 61) (Motion 61); Defendant Strong Capital's Motion to Dismiss Count XII (d/e 64) (Motion 64); and Defendants Kenneth L. Dean, Nina S. Dean, Jeffrey F. Dean and Melissa A. Dean's Motion to Dismiss Count IX of Plaintiff's First Amended Complaint (d/e 71) (Motion 71) (collectively the Motions). The Motions move to dismiss the case 1) for lack of subject matter jurisdiction and 2) for failure to state a claim. For the

reasons set forth below, the Motions to dismiss for  2) failure to state a claim should be ALLOWED.

<u>STATEMENT OF FACTS</u>

This case concerns a seventy-six mile rail line from LaHarpe, Illinois, to Hollis, Illinois (Line).  The Surface Transportation Act grants the Surface Transportation Board (STB) jurisdiction to regulate railroads and the abandonment of railroad lines.  49 U.S.C. §§ 10501, 10903(a)(1)(A).  TP&W owned and operated the Line for many years prior to the year 2000.  <u>First Amended Complaint (d/e 30) (Complaint)</u>, Exhibit A, <u>STB Finance Docket No. 34335 Decision entered October 28, 2004 (October 28, 2004 Decision)</u>, at 2.  TP&W was wholly owned and controlled by RailAmerica, Inc. (RailAmerica) through wholly owned intermediate companies.  <u>Complaint</u>, ¶ 51; <u>see</u> <u>TP&W Entry of Appearance, Disclosure Statement and Designation of Lead Counsel (d/e 4) (TP&W Certificate of Interest)</u>, ¶ 3.[1]

On December 29, 2000, TP&W conveyed an operating easement over the Line (SF&L Easement) to SF&L Railway, Inc. (SF&L).  On January 10, 2001, SF&L applied to the STB for an exemption which would allow it to operate the Line under the SF&L Easement (SF&L Proceeding).  <u>Plaintiff's</u>

---

[1] In 2012, RailAmerica was acquired by Genesee & Wyoming, Inc.  <u>Complaint</u>, ¶ 53; <u>San Pedro Trails, Inc., Entry of Appearance, Disclosure Statement and Designation of Lead Counsel (d/e 60) (San Pedro Trails, Inc., Certificate of Interest)</u>, ¶ 3

Response to Defendant Toledo, Peoria & Western Railway Corp.'s Motion to Dismiss Counts IV Through XII of Plaintiff's First Amended Complaint (d/e 52) (KJRC Response), Exhibit A, STB Finance Docket No. 33995, Decision entered October 15, 2002 (October 15, 2002 Decision), at 1.[2]

In March 2001, Plaintiff Keokuk Junction Railway Company (KJRC or KJRY) intervened in the SF&L Proceeding by filing a petition to revoke SF&L's exemption application to allow SF&L to operate the Line. Id., at 2.

On March 2, 2002, TP&W conveyed by quit claim deed to Defendant Orlando C. Crowthers Post No. 16 of the American Legion (American Legion Post No. 16) TP&W's interests in a part of the Line in the City of Canton, Fulton County, Illinois. Complaint, Exhibit F, Notice of Conveyance dated May 24, 2012 (Notice of Conveyance).[3] TP&W did not have permission from the STB to make this transfer. The SF&L Proceeding was pending at the time of this transfer.

On September 3, 2002, SF&L commenced a proceeding before the STB to secure an exemption to allow it to abandon the Line. Plaintiff's Response to Defendant Strong Capital's Motion to Dismiss Count XII

---

[2] The Court may consider matters of public record, such as the files of STB proceedings, in deciding motions to dismiss under Rule 12(b)(6). See Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994).

[3] The Complaint does not contain a copy of the recorded deed evidencing the alleged conveyances to the Orlando C. Crowthers Post No. 16 American Legion, Mt. Carmel Baptist Church, John P. and Becky L. Eyman, or Mac Convenience Stores, LLC. The conveyances are recited as exceptions to the legal description in the Notice of Conveyance. The conveyances are also recited as having been recorded, but no recording information is provided.

(d/e 67), Ex. 2, <u>STB AB Docket No. 448 SF&L Railway, Inc., Abandonment</u> <u>Exemption in Hancock, McDonough, Fulton and Peoria Counties, Illinois,</u> <u>Case Information Docket Sheet (Abandonment Proceeding)</u>.

On September 12, 2002, TP&W conveyed by quit claim deed to Defendant Mount Carmel Baptist Church TP&W's interests in a part of the Line located in the City of Canton, Fulton County, Illinois.  <u>Complaint</u>, Exhibit F, <u>Notice of Conveyance</u>.  TP&W did not have permission from the STB to make this transfer.  The SF&L Proceeding was pending at the time of this transfer.

On September 26, 2002, TP&W conveyed by quit claim deed to Defendants John P. Eyman and Becky L. Eyman (the Eymans) TP&W's interest in a part of the Line in the City of Canton, Fulton County, Illinois. <u>Notice of Conveyance</u>.  TP&W did not have permission from the STB to make this transfer.  The SF&L Proceeding was pending at the time of this transfer.

On October 15, 2002, the STB issued its Decision in the SF&L Proceeding.  The STB found that TP&W and SF&L were improperly trying to abandon the Line and sell it off for salvage.  The STB found that these actions were an abuse of the exemption process.  The STB revoked SF&L's operating exemption and ordered SF&L to reconvey its interest in

the Line back to TP&W.  October 15, 2002 Decision, at 3-4, 18-20.  The

Abandonment Proceeding filed by SF&L, however, remained pending.

On October 31, 2002, RailAmerica and all of the railroad companies

owned by it, including TP&W, executed a Master Easement Agreement, by

which the companies granted to Defendant Strong Capital III, L.P. a

perpetual license "in, on, under and across an area of land that includes,

with respect to each License, all of the Parcel that is subject to such

License and that extends one foot beyond each boundary of such Parcel."

Complaint, Exhibit I, Master Easement Agreement, dated October 31, 2002

(hereinafter "Master Easement Agreement" or "Agreement").[4]  Todd N.

Cecil, RailAmerica's Vice President for Real Estate, executed the Master

Easement Agreement on behalf of RailAmerica and all of its railroads,

including TP&W.  Master Easement Agreement, at 3.  Strong Capital III,

L.P. subsequently assigned the Master Easement Agreement to Defendant

Strong Capital II, LP and Defendant Strong Capital III-GP, LLC.  Complaint,

¶ 138 (Strong Capital III, L.P.; Strong Capital II, LP; and Strong Capital III-

GP, LLC, are hereinafter collectively referred to as "Strong Capital").

---

[4] The Amended and Restated Supplemental Agreement for Assignment of Conveyance and Transfer dated October 31, 2002, between Strong Capital and RailAmerica lists the parcels subject to the perpetual easement in favor of Strong Capital III, L.P.  Master Easement Agreement.  This document has not been filed with the Court.

TP&W did not have permission from the STB to make this transfer.  The Abandonment Proceeding was pending at the time of the transfer.

Under the Master Easement Agreement, Strong Capital could enter and use all of the property, but could not interfere with rail operations on the property.  The Master Easement Agreement apparently transferred to Strong Capital the right to lease TP&W's interests in the real property that made up the Line and to collect the rents and revenues from such property.  Strong Capital characterizes the Master Easement Agreement as an assignment of rents.  Strong Capital's Motion to Dismiss Count XII (d/e 64), Exhibit 1, Memorandum of Law in Support of Motion to Dismiss Count XII (d/e 64-1) (Strong Memorandum), at 8.  The Master Easement Agreement was not recorded until November 22, 2010.

On January 31, 2003, the STB denied SF&L's petition to reopen the SF&L Proceeding and dismissed as moot the Abandonment Proceeding.  Plaintiff's Response, Exhibit C, STB Finance Docket No. 34310, Decision entered February 14, 2003 (February 14, 2003 Decision), at 1.  On the same day, January 31, 2003, KJRC filed Petition to Provide Alternate Rail Service on the Line.  Id.

On February 6, 2003, the STB denied TP&W and SF&L's petition to stay the reconveyance of the Line back to TP&W pursuant to the October

15, 2002 Decision.  The STB also prohibited TP&W from alienating any

portion of the Line while TP&W's action for judicial review of the October

15, 2002 Decision was pending.  <u>Strong Capital Memorandum</u>, Exhibit E,

<u>STB Finance Docket No. 33995, Decision entered February 6, 2003</u>

<u>(February 6, 2003 Decision)</u>, at 3-4.  On April 1, 2003, the STB lifted the

prohibition on TP&W from transferring interests in the Line because TP&W

had dismissed its action for judicial review.  <u>Strong Capital Memorandum</u>,

Exhibit F, <u>STB Finance Docket No. 33995, Decision entered April 1, 2003</u>

<u>(April 1, 2003 Decision)</u>, at 1-2.

On February 14, 2003, the STB denied KJRC's Petition to Provide

Alternate Rail Service for the Line.  <u>February 14, 2003 Decision</u>, at 1.  The

STB found KJRC's request "has been eclipsed by SF&L's reconveyance of

the La Harpe Line to TP&W."  <u>Id.</u> at 2.  TP&W assured the STB that it

would resume operations over the Line.  <u>Id.</u>  Given those assurances, the

STB denied KJRC's Petition to Provide Alternate Rail Service.  <u>Id.</u> at 2-3.

On March 4, 2003, the STB issued the final correspondence in the

Abandonment Proceeding ending all activity in that proceeding.  <u>STB AB</u>

<u>Docket No. 448, Case Information Docket Sheet</u> .

On April 9, 2003, KJRC filed its application to force TP&W to sell the

Line to KJRC (Feeder Line Application).  <u>October 28, 2004 Decision</u>, at 3.

The Act authorizes the STB to force the owner of a rail line to sell to

another carrier under certain specified conditions.  See 49 U.S.C.

§ 10907(c)(1).  The Feeder Line Application sought to force the sale of the

Line and an additional contiguous two and one-half mile stretch of tract

known as the Mapleton Spur.  Toledo, Peoria & Western Ry. v. Surface

Transportation Board, 462 F.3d 734, 737 (7th Cir. 2006).  KJRC estimated

that the Line and the Mapleton Spur consisted of 864 acres.  KJRC

assumed that TP&W had marketable title to fifty percent of the land.  KJRC

stated that it could not be more precise because TP&W would not provide

copies of the deed and other relevant documents to establish TP&W's

interests in property in the Line and the Mapleton Spur.  TP&W took the

position that the documents were publically available in county recorders'

offices.  Id.  KJRC subsequently dropped the request to force the sale of

the Mapleton Spur from the Feeder Line Application.  Id. at 737-38.

During the Feeder Line Application Proceeding, TP&W submitted to

the STB the Verified Statement of RailAmerica Vice President Cecil.  See

October 28, 2004 Decision, at 16; Plaintiff's Response, Exhibit F, Verified

Statement of Todd Cecil dated October 13, 2003 ("Cecil Statement" or

"Statement").[5]  Cecil opined on the value of the Line.  Cecil stated under

oath that he conducted "[a]n exhaustive, comprehensive review of TPW's

title to the corridor."  Cecil Statement, at 118.[6]  Cecil determined that the

Line consisted of 672 acres.  See October 28, 2004 Decision, at 18-19.

Cecil attached to the Statement copies of numerous documents affecting

the title to the Line.  See Defendant Toledo, Peoria & Western Railway

Corp.'s Motion to Dismiss Counts IV Through XII of Plaintiff's First

Amended Complaint (d/e 38), attached Memorandum in Support of

Defendant Toledo, Peoria & Western Railway Corp.'s Motion to Dismiss

Counts IV Through XII of Plaintiff's First Amended Complaint (d/e 38-1)

(TP&W Memorandum), and attached Affidavit of Staci Korpel (Korpel

Affidavit) and documents attached thereto.  Cecil did not include the Master

Lease Agreement in these documents.  TP&W further did not otherwise

disclose to the STB or KJRC the existence of the then unrecorded Master

Easement Agreement.  Complaint, ¶ 136.

On February 24, 2004, TP&W conveyed by quit claim deed to

Defendants Melissa Dean, Jeffrey Dean, Nina Dean, and Kenneth Dean

---

[5] The Cecil Statement is referenced in the October 28, 2004 Decision attached to the Complaint as Exhibit A.  Documents attached to the Complaint are part of the Complaint for all purposes.  Fed. R. Civ. P. 10(c).  Documents, such as the Cecil Statement, that are referenced in the Complaint and central to the claim may be considered in connection with motions to dismiss under Rule 12(b)(6).  Rosenblum v. Travelbyus.com Ltd., 299 F.3d 657, 661 (7th Cir. 1994).

[6] The page number is the page number assigned by KJRC to its exhibits to Plaintiff's Response.

(the Deans) TP&W's interest in a part of the Line in the City of Canton, Fulton County, Illinois.  Complaint, Exhibit G, Quit Claim Deed dated February 24, 2004.  The Deed was recorded on March 10, 2004.  Id. TP&W did not have permission from the STB to make this transfer.  The Feeder Line Application Proceeding was pending at the time of this transfer.

On September 30, 2004, TP&W conveyed to Defendant Mac's Convenience Stores, LLC (Mac's), TP&W's interest in a part of the Line in the City of Canton, Fulton County, Illinois.  Complaint, Exhibit F, Notice of Conveyance dated May 24, 2012.  TP&W did not have permission from the STB to make this transfer.  The Feeder Line Application Proceeding was pending at the time of this transfer.

On October 28, 2004, the STB approved KJRC's Feeder Line Application.  The STB found that KJRC demonstrated that the circumstances existed to authorize the STB to order TP&W to sell the Line to KJRC.  October 28, 2004 Decision, at 4-10.  The STB then addressed the value of the Line.  The price in a forced sale under § 10907 is either the going concern value (GCV) or the net liquidation value (NLV) whichever is greater.  49 U.S.C. § 10907(b)(2).  The parties agreed that the NLV was the appropriate measure of value to use in this case.  Toledo, Peoria &

Western Ry., 462 F.3d at 740. The NLV consists of the liquidation value of the land and the net salvage value (NSV) of the track, railroad ties and related equipment. October 28, 2004 Decision, at 11-15. The STB set the NSV of the track and equipment at $3,899,121.00. Id., at 15.

The STB then addressed the value of the land in the Line. The STB used the term "right-of-way" to refer to the Line. Based on the Cecil Statement, TP&W contended that it had a fee interest in 672 acres that made up the Line. The STB stated that Cecil "valued the right-of-way both as an assembled rail transportation corridor and, alternatively, as separate, unrelated parcels of non-rail real estate (piecemeal)." Id., at 16. Cecil used comparable property "across the fence" from parcels neighboring the Line and then added an enhancement factor because KJRC was purchasing a completely assembled rail corridor. Id., at 16-17. Cecil also considered the rental income from the property comprising the Line in his assembled corridor analysis:

> Also supporting this 'assembled corridor' highest and best use valuation is the fact that other revenue-generating ancillary uses can be made of the corridor without interfering with its use for rail purposes. Uses such as electric power lines, telecommunications, water, storm and sanitary sewer pipe lines and other miscellaneous occupancies along the corridor, for which fees are paid to the corridor owner, contribute to the economic viability of the corridor for rail use.

<u>Cecil Statement</u>, at 111-12.  In making this statement, Cecil did not disclose the Master Easement Agreement or discuss its impact on the availability of rental income to any purchaser of the Line.

Under the assembled corridor method, Cecil valued the land in the Line at $7,009,497.00.  <u>Id.</u>, at 17.  The STB rejected this valuation because an "assembled corridor" valuation was more akin to a GCV value rather than an NLV value.  <u>Id.</u>, at 17-18.

Cecil also valued the 672 acres broken into separate parcels, "For his unassembled, or piecemeal, valuation, Cecil analyzed the real estate deeds of the land parcels making up the right-of-way, reduced the acreage of the parcels encumbered by the road and street right-of-way, and excluded parcels with reversionary interests."  <u>Id.</u>, at 18.  Cecil opined that the land in the Line, if it was broken up and sold in parcels, was $2,863,173.00.  <u>Id.</u>, at 18.

KJRC's expert Brian Mooty opined that TP&W only had a fee interest in 31.657 acres of the 672 acres in the Line.  He opined that TP&W's interests in the rest of the land in the Line consisted of easements that would not have value upon the liquidation and termination of the use of the property as a railroad.  <u>Id.</u>, at 19.

KJRC disputed the analysis of its own expert, Mooty, arguing that TP&W only held 28.24 acres in fee.  KJRC hired another expert, L. Arlen Higgs, who put the value of the 28.24 acres at $37,140.00.

Part of the parties' disagreement on value concerned whether the acreage should be compared to land adjacent to a rail line.  TP&W compared the land to sales of properties adjoining rail lines.  KJRC's experts assumed that in an NLV analysis, the Line should be treated as if it ceased to exist, and so, the sales of comparable property not near rail property provided a more accurate estimate of value.   The STB agreed with KJRC.  The STB stated, "Properties adjoining active rail lines ordinarily command higher prices than abandoned rail properties in a rural area, most of which would be purchased for agricultural purposes."  Id., at 20.

The STB adopted Mooty's analysis of the state of the title to the Line and found that TP&W held 31.657 acres in fee in the Line, holding the rest of the Line in easements.  The STB agreed that TP&W's easements did not have a market value in an NLV analysis.  See Id., at 20.  The STB found that the land in the Line had a NLV of $41,635.00.  The STB found that total value was $3,940,756.00.  Id.

The STB ordered TP&W to convey its interest in the Line to KJRC for $3,940.756.00.  Id., at 25.  The STB ordered TP&W to deliver to KJRC all

releases from any mortgages and all original documents conveying interest in the Line to KJRC within ninety days of closing.  Id., at 24.

On November 2004, TP&W filed a petition for reconsideration. Complaint, Exhibit B, STB Finance Docket No. 34335, Decision entered February 7, 2005 (February 7, 2005 Decision), at 2.  TP&W submitted rebuttal opinions from additional experts, including Charles W. Rex and Douglas S. Golden.  Id., at 4; see Toledo, Peoria & Western Ry., 462 F.3d at 742.

On January 10, 2005, TP&W conveyed by quit claim deed to Defendant San Pedro Trail, Inc., TP&W's interests in a part of the Line in the City of Canton, Fulton County, Illinois, and in the City of Cuba, Illinois. Complaint, Exhibit D, Quit Claim Deed executed January 10, 2005.  TP&W did not have permission from the STB to make this transfer.  The Feeder Line Application Proceeding was pending at the time of this transfer.  The deed was recorded on January 11, 2005.  Id.  San Pedro Trail, Inc., and TP&W were both wholly owned by RailAmerica.  Complaint, ¶¶ 51-52; TP&W Certificate of Interest, ¶ 3; San Pedro Trails, Inc., Certificate of Interest, ¶ 3.

On January 11, 2005, TP&W conveyed by quit claim deed to Defendant Vaughan & Bushnell Manufacturing Company (Vaughn &

Bushnell) TP&W's interests in a part of the Line located in McDonough

County, Illinois.   Complaint, Exhibit H, Quit Claim Deed dated January 11,

2005.  TP&W did not have permission of the STB to make this transfer.

The Feeder Line Application Proceeding was pending at the time of this

transfer.  The deed was recorded on January 25, 2005.  Id.

On January 20, 2005, TP&W conveyed by quit claim deed to

Defendant San Pedro Trail, Inc., TP&W's interests in a part of the Line in

Fulton County, Illinois.  Complaint, Exhibit E, Quit Claim Deed executed

January 20, 2005.  TP&W did not have permission of the STB to make this

transfer.  The quit claim deed was recorded on January 21, 2005.  Id.  On

February 1, 2005, TP&W executed a corrective quit claim deed for this

transaction.  The corrective deed was recorded February 2, 2005.

Complaint, Exhibit E, Corrective Quit Claim dated February 1, 2005.

On January 24, 2005, the STB granted a thirty day extension of the

closing date of the sale.  TP&W Memorandum, Exhibit B, STB Finance

Docket No. 34335, Decision entered January 24, 2005 (January 24, 2005

Decision).  The STB noted,

> TP&W, in its petition to stay the October 28 Decision, stated at
> 9 n.5 that it would show "that it has sold parcels along the Line
> that the Board has concluded are not owned by TP&W in fee
> simple as fee simple property and that the buyer has obtained
> title insurance for those parcels."  We will therefore direct
> TP&W to identify which, if any of the properties sold were

included in its valuation.  We will also direct TP&W to refrain
from selling such properties.  The Line's purchase price will be
reduced by an appropriate amount to account for any land that
was sold if that land had been included in the total acreage
TP&W owned in fee.

January 24, 2005 Decision, at 2.

On February 3, 2005, counsel for TP&W sent the STB a letter in

response to the January 24, 2005 Decision.  Memorandum in Support of

Defendant Toledo, Peoria & Western Railway Corp.'s Motion to Dismiss

Counts IV Through XII of Plaintiff's First Amended Complaint (d/e 38)

(TP&W Memorandum), Exhibit A, Letter dated February 3, 2005 (February

3, 2005 Letter).[7]  TP&W disclosed that it made the February 24, 2004, sale

to the Deans; the September 30, 2004, sale to Mac's Convenience Stores,

LLC; the December 17, 2004, sale to Vaughn & Bushnell; and the January

11, 2005, and January 20, 2005, sales to San Pedro Trails, Inc.  Id., at 2-3

and attached grid.  Counsel for TP&W further stated,

> As can readily be seen, just these five sales generated
> substantially greater value for the real estate than suggested by
> the Keokuk Junction Railway Company ("KJRY") and adopted
> by the Board for the entire line.  Indeed, all of these sales were
> for real property that KJRY's expert Mr. Mooty determined were
> not owned in fee simple (except for the portion of one small

---

[7] The February 3, 2005 Letter is referenced in the February 7, 2005 Decision that is attached as Exhibit B
to the Complaint.  Documents attached to the Complaint are part of the Complaint for all purposes.  Fed.
R. Civ. P. 10(c).  Documents, such as the February 3, 2005 Letter, that are referenced in the Complaint
and central to the claim may be considered in connection with motions to dismiss under Rule 12(b)(6).
Rosenblum, 299 F.3d at 661.

> parcel) and for which KJRY's expert Mr. Higgs determined had
> no value or substantially little value.

Id., at 1. TP&W's counsel noted that the purchasers secured title insurance

for the properties purchased. Counsel concluded,

> TP&W has not transferred any property that would effect
> (sic) the valuation offered by KJRY based on the analyses of
> Mr. Mooty and Mr. Higgs. TP&W is willing to have the Board
> exclude these six parcels from the valuation proposed by Mr.
> Cecil, as confirmed by Mr. Rex and Mr. Golden. TP&W
> contends that these free market sales demonstrate the
> correctness of its position vis-à-vis the value of the real estate
> in the line.

Id., at 3.

On February 7, 2005, the STB amended the October 28, 2004,

Decision. February 7, 2005 Decision. The STB reconsidered its

determination of both the NSV of the equipment and the NLV of the land.

The STB acknowledged the February 3, 2005 Letter in which TP&W

informed the STB of the five sales of parcels along the Line. TP&W

represented that the purchasers secured title insurance for these parcels.

The STB, however, found that TP&W did not provide verification of the

issuance of the title insurance. Id., at 6. The STB also refused to consider

the opinions of Rex and Golden as untimely and not appropriate on

reconsideration. Id. Thus, the STB did not reconsider its analysis of the

state of the title to the 672 acres.

The STB found, however, that it should have used Cecil's per acreage valuation analysis to value the 31.657 acres held in fee.  The STB adjusted the value of the NLV of the land in the Line to $138,794.00.  Id., at 10-11.  The STB also reconsidered the NSV of the equipment, increasing the NSV to $4,026,948.00.  Id., at 12-13.  The STB set the total purchase price at $4,165,742.00.  Id., at 15.  The STB set the closing date at February 11, 2005.  Id.

On or about February 11, 2005, KJRC paid TP&W the purchase price of $4,165,742.00.  TP&W accepted the payment.  Complaint, ¶ 25.

TP&W sought judicial review of the decision of the STB.  The Seventh Circuit Court of Appeals affirmed the decision of the STB.  Toledo, Peoria & Western Railway v. Surface Transportation Board, 462 F.3d 734, 754 (7th Cir. 2006).

KJRC alleges that TP&W has not complied with the October 28, 2004 Decision, as modified by the February 7, 2005 Decision (hereinafter collectively the Decisions).  Complaint, ¶¶ 26-27.[8]  The Notice of Conveyance attached as Exhibit F to the Complaint indicates that TP&W did not tender a deed for the acreage described in the Cecil Statement, less the parcels noted in the February 3 2005 Letter.  Rather, TP&W

---

[8] Count II alleges facts common to the remaining Counts III through XII, but does not pray for any separate relief.

apparently tendered a quitclaim deed that would have conveyed to KJRC

property described, in part, as "Land located within the railroad right-of-way

. . . said parcel being 33.65 miles in length and consisting of all land that is

contiguous to the active railroad corridor, as now constructed . . . ." Notice

of Conveyance, attached legal description at 1.  KJRC alleges that this was

insufficient to comply with the STB's order to convey the Line to KJRC.

Complaint, ¶ 26.  Count I of this action asks the Court to order TP&W to

convey all of the Line pursuant to the Decisions.  Count I is not at issue in

the pending Motions.

KJRC also alleges that the transfers to the other Defendants were

void.  KJRC alleges that at the time of each attempted transfer, a

proceeding related to the ownership of the Line was pending before the

STB, either the SF&L Proceeding, the Abandonment Proceeding, the

Petition to Provide Alternate Rail Service, or the Feeder Line Application

Proceeding.  Complaint, ¶¶ 28-40, 54, 65, 74, 83, 94, 104, 114, 124, 133.

KJRC alleges that any attempted transfer while such a proceeding is

pending is void.  KJRC asks the Court in Counts IV through XII of the

Complaint:  (1) to declare (a) that all of those transfers are void, (b) that

TP&W still owned the interests in property purported to be conveyed in the

transactions at issue in these Counts, and (c) that such parcels are part of

the Line; and (2) to order TP&W to transfer to KJRC those interests as part

of the Line and otherwise to comply with the STB's Decisions.[9]  The

various Defendants move to dismiss Counts IV through XII.[10]

## ANALYSIS

The Defendants have filed their Motions to Dismiss under both Rule

12(b)(1) and 12(b)(6).  Fed. R. Civ. P. 12(b)(1) & (b)(6).  Motions to dismiss

under Rule 12(b)(1) challenge the Court's subject matter jurisdiction to hear

the case.  A Rule 12(b)(1) motion may challenge the sufficiency of the

complaint based on its allegations (a facial challenge) or may challenge

subject matter jurisdiction based on facts not set forth in the complaint (a

factual challenge).  Apex Digital, Inc. v. Sears, Roebuck & Co., 572 F.3d

440, 443-44 (7th Cir. 2009).  The Court may consider matters outside of the

pleadings to resolve a Rule 12(b)(1) factual challenge.  See St. John's

United Church of Christ v. City of Chicago, 502 F.3d 616, 625 (7th Cir.

2007).  The Defendants make both a facial and factual challenge to subject

matter jurisdiction.

A 12(b)(6) motion to dismiss challenges whether the complaint states

a claim on which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The

---

[9]KJRC joined the other Defendants besides TP&W as necessary parties because a decision could affect
their interests in property.  Fed. R. Civ. P. 19(a); see Opinion entered January 2, 2013 (d/e 28) (January
2, 2013 Opinion), at 9.
[10] The claims in Count III have been resolved.  Text Order entered March 28, 2013.  Defendant Mount
Carmel Baptist Church answered the Complaint.  Answer to First Amended Complaint (d/e 59).

Federal Rules require only "a short and plain statement of the claim

showing that the pleader is entitled to relief," and allegations must be

"simple, concise, and direct."  Fed. R. Civ. P. 8(a)(2) & (d)(1).  While a

complaint need not contain detailed, specific factual allegations, it must

contain sufficient facts to "state a claim to relief that is plausible on its face."

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is

plausible if the plaintiff "pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct

alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim is plausible

on its face if it provides the defendant fair notice of what the claim is and

the grounds upon which it rests.  George v. Smith, 507 F.3d 605, 608 (7th

Cir. 2007).  Dismissal under Rule 12(b)(6) is appropriate when "the factual

detail in a complaint [is] so sketchy that the complaint does not provide the

type of notice of the claim to which the defendant is entitled under Rule 8."

Airborne Beepers & Video, Inc. v. AT & T Mobility, LLC, 499 F.3d 663, 667

(7th Cir. 2007).

In deciding a Rule 12(b)(6) motion, the Court must accept as true all

well-pleaded factual allegations in the complaint and draw all inferences in

the light most favorable to the plaintiff.  Hager v. City of West Peoria, 84

F.3d 865, 868-69 (7th Cir. 1996); Covington Court, Ltd. v. Village of Oak

Brook, 77 F.3d 177, 178 (7th Cir. 1996). The Court may also consider matters of public record, such as the public dockets of the STB. See Henson, 29 F.3d at 284. Finally, the Court may consider documents that are referenced in the Complaint and central to the claims alleged. Rosenblum, 299 F.3d at 661. The Court will address the Rule 12(b)(1) Motions first, and then the Rule 12(b)(6) Motions.

1) Subject Matter Jurisdiction

KJRC invokes this Court's subject matter jurisdiction pursuant to 49 U.S.C. § 11704(a). Section 11704(a) states,

> (a) A person injured because a rail carrier providing transportation or service subject to the jurisdiction of the Board under this part does not obey an order of the Board, except an order for the payment of money, may bring a civil action in a United States District Court to enforce that order under this subsection.

49 U.S.C. § 11704(a). KJRC asks the Court to force TP&W to comply with the Decisions. KJRC alleges in Count I that TP&W has failed to tender a proper quitclaim deed conveying all of the Line as required by the Decisions. KJRC effectively seeks an order for specific performance to compel TP&W to convey the Line to KJRC. Counts IV through XII ask the Court to declare that the transfers to the other Defendants set forth in those Counts are void and that TP&W therefore owned those parcel as part of the Line and must also be compelled to transfer those parcel to KJRC.

KJRC invokes this Court's equitable jurisdiction under § 11704(a) to secure the requested relief.  Specific performance is a type of equitable relief.  See e.g., Medcom Holding Co. v. Baxter Travenol Laboratories, Inc., 984 F.2d 223, 227 (7th Cir. 1993).  Furthermore, compelling a party to comply with an STB order is injunctive in nature.  When a federal statute authorizes the Court to exercise equitable jurisdiction, this Court may exercise all of its equitable authority to secure a proper remedy, "Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction."  Porter v. Warner Holding Co., 328 U.S. 395, 398 (1946).  This Court directed the parties to submit supplemental briefs to address the impact of these principals on this Court's jurisdiction in this Case.  Order entered July 16, 2013 (d/e 73).  The parties have done so.

The Defendants properly note that the invocation of equitable jurisdiction does not affect the Court's subject matter jurisdiction, but only the remedies available in the exercise of that jurisdiction.  See United States v. Holtzman, 762 F.2d 720, 724 (9th Cir. 1985) ("[F]ederal courts do not depend on a specific delegation of power to issue injunctions in cases over which they otherwise have subject matter jurisdiction.").  The Court's jurisdiction, therefore, is limited to compelling compliance with the

Decisions pursuant to § 11704(a). The scope of the remedies may include appropriate equitable remedies to effectuate the Decisions.

TP&W argues that the Court's equitable jurisdiction in this case is limited by statute. TP&W argues that § 11702 of the Surface Transportation Act limits this Court's equitable jurisdiction. 49 U.S.C. § 11702. Section 11702 authorizes the STB to bring actions for injunctive relief to enjoin violations of the Surface Transportation Act or its own orders. TP&W argues that § 11702 limits the Court's equitable jurisdiction under the Act to actions brought by the Board. The Court disagrees. Section 11704(a) authorizes an injured party, such as KJRC, to seek relief in this Court to compel a party to obey an order of the STB other than for payment of money. An order to compel action is injunctive in nature and invokes this Court's equitable jurisdiction. Section 11702 does not limit the invocation of that authority under § 11704(a).

Similar situations have arisen under other statutes. For example, in Herbold Laboratory, Inc. v. United States, 413 F.2d 342 (9th Cir. 1969), the Ninth Circuit considered the scope of the Congressional grant of equitable authority under § 5 of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45. Section 5(a) of the FTC Act prohibits unfair competition and unfair and deceptive acts and practices in or affecting commerce. Section

5(l) authorizes the imposition of civil penalties for violations of § 5(a) in certain circumstances.  15 U.S.C. § 45(l).  The <u>Herbold</u> Court held that this limited grant of authority to award civil penalties did not authorize the full panoply of equitable remedies for violations of § 5.  <u>Id.</u> at 344-45.  Section 13(b) of the FTC Act, however, authorizes the FTC to seek permanent injunctions in proper cases to enjoin violations of the FTC Act, including §5(a).  15 U.S.C. § 53(b).  An action brought under § 13(b) invokes the federal court's complete equitable authority to provide complete relief.  <u>See e.g.</u>, <u>F.T.C. v. Freecom Communications, Inc.</u>, 401 F.3d 1192, 1202 n.6 (10th Cir. 2005).  The limitation on available remedies set forth in § 5(l) of the FTC Act did not affect Congress's ability to authorize all equitable remedies under other sections of the FTC Act.  Similarly here, § 11702 does not limit or affect the equitable jurisdiction that Congress has authorized in § 11704(a).  Therefore, this Court can award any appropriate equitable remedy to enforce the Decisions. [11]  With these considerations in mind the Court addresses the Defendants' jurisdictional arguments.

The Defendants raise several jurisdictional arguments.  The Defendants argue that the Court lacks subject matter jurisdiction because

---

[11] TP&W and San Pedro Trails, Inc., correctly note that <u>Porter</u> was brought by a public agency. <u>Supplemental Brief of Toledo, Peoria & Western Railway Corp. and Defendant San Pedro Trails, Inc., in Support of Motion to Dismiss Counts IV through XII of Plaintiff's First Amended Complaint (d/e 78)</u>, at 2 n. 10.  In such situations the public interest is necessarily involved, and so, the scope of available equitable relief is broader than relief generally available in private proceedings.  <u>Porter</u>, 328 U.S. at 398.

the transfers to the Defendants occurred before the STB issued the February 7, 2005 Decision.  The Defendants also argue that the Court lacks subject matter jurisdiction with respect to the transfers to Defendants American Legion Post No. 16, Mt. Carmel Baptist Church, the Eymans, and Strong Capital, as set forth in Counts VI, VII, VIII, and XII, because the transfers occurred before KJRC commenced the Feeder Line Application Proceedings on April 9, 2003.[12]  The Defendants also argue that the Court lacks jurisdiction because they contend that the property transferred to the Defendants was not within the Line.

The Defendants' argument that the property at issue was not within the Line depends, in part, on the Defendants' contention that the Decisions did not order TP&W to convey by quitclaim deed all of its interests in the 672 acres described in the Cecil Statement and accompanying documents. The Notice of Conveyance indicates that TP&W took the position that the STB only ordered it to convey a 33.65 strip of land that was "contiguous to the active railroad corridor, as now constructed," rather than the entire 672 acres described in the Cecil Statement.  The Defendants seem to rely on this interpretation of the Decisions to argue that this Court lacks jurisdiction over the remainder of the 672 acres.

---

[12] The Complaint contains a typographical error in which KJRC inadvertently numbered Count VIII as a second Count VII.

This argument is clearly wrong.  The STB stated in the October 28, 2004 Decision that the parcels identified by Cecil comprised the right-of-way.  October 28, 2004 Decision, at 18.  Cecil determined that those parcels covered 672 acres.  Id. at 18-19.  Both parties included the entire parcels in the valuation of the Line.  Cecil valued the parcels at $7,009,497.00, as an assembled corridor and $2,863,173.00, as dissembled parcels.  KJRC's expert, Mooty, did not dispute that TP&W had an interest in property in all 672 acres.  He only disputed whether the interest was in fee or as the holder of an easement.  The parties disputed whether the whole parcels should be valued as parcels adjoining a rail line. TP&W's counsel stated in the February 3, 2005 Letter that the parcels conveyed to the Deans, Mac's, Vaughn & Bushnell, and San Pedro Trails, Inc., were in the Line.  The fact that the right-of-way, or the Line, is comprised of the entire 672 acres identified by Cecil is clear.   The STB ordered TP&W to convey the right-of-way by quitclaim deed.  Thus, the STB ordered TP&W to convey all of its interests, whether fee or easement (or any other interest), in the 672 acres described by Cecil. [13]  Therefore, the Decisions affected the full 672 acres described by Cecil, and this Court has jurisdiction to force compliance with the STB's orders with respect to

---

[13] The effect of the Decisions on the parcels conveyed to Mac's, the Deans, Vaughn & Bushnell and San Pedro Trails, Inc., before the February 7, 2005 Decision is discussed below.

the full 672 acres.  Defendants' argument that the Decisions only concern a

33.65 mile ribbon of land on which the track sits, is incorrect.[14]

The Defendants also argue that the Court lacks jurisdiction because

TP&W conveyed the interests at issue in Counts IV through XII before the

February 7, 2005 Decision.  The Court disagrees.  As explained in the

Opinion entered January 2, 2013 (d/e 28) (January 2, 2013 Opinion), the

Feeder Line Application Proceeding, brought under 49 U.S.C. § 10907,

authorized the STB to force the sale of TP&W's interest in the Line as of

April 9, 2003, the date that KJRC commenced the proceeding.  January 2,

2013 Opinion, at 7. Therefore, the STB had jurisdiction over the 672 acres

described by Cecil, as explained above.

The parcels transferred to Mac's, the Deans, Vaughn & Bushnell, and

San Pedro Trails, Inc., as set forth in Counts IV, V, IX, X, and XI, are within

the 672 acres.  TP&W's counsel so states in his February 3, 2005 Letter.[15]

Therefore, this Court has subject matter jurisdiction to determine whether

KJRC is entitled to relief against Mac's, the Deans, Vaughn & Bushnell,

---

[14] The full 672 acres were also apparently at issue in the judicial review proceeding before the Seventh
Circuit. The Seventh Circuit recited that KJRC initially estimated the Line to consist of 864 acres with the
Mapleton Spur.  The Seventh Circuit further recited that after KJRC withdrew the application to purchase
the Mapleton Spur, Cecil estimated that TP&W owned the 672 acres that comprised the Line.  Toledo,
Peoria, & Western Ry., 462 F.3d at 738.  The Seventh Circuit further recited that KJRC's expert Mooty did
not challenge that TP&W had an interest in property in the 672 acres, only the quality of that interest. Id.,
at 739.  The Seventh Circuit's opinion gives no inkling that TP&W ever challenged that the Decisions
required it to convey all of its interests in the 672 acres.
[15] The Korpel Affidavit attached to TP&W's Motion (d/e 38) does not address whether the parcels are
within the 672 acres described by Cecil, and so, is immaterial to this issue.

and San Pedro Trails, Inc., in Counts IV, V, IX, X, and XI to effectuate the Decisions.

Defendants argue that the STB stated in the January 24, 2005 Decision that it would not void the transfers to Mac's, Vaughn & Bushnell, the Deans, and San Pedro Trails, Inc., if the transfers did not involve any of the land that the STB found to be held in fee, and so, this Court lacks jurisdiction to declare the transfers to be void. This argument goes to the merits of KJRC's claim that the transfers were void as a matter of law, not to subject matter jurisdiction. The Court will address these arguments below in connection with the Rule 12(b)(6) motions. The Court has subject matter jurisdiction with respect to Counts IV, V, IX, X, and XI.

The parcels transferred to American Legion Post No. 16, Mt. Carmel Baptist Church, and the Eymans, as set forth in Counts VI, VII, and VIII, are not part of the 672 acres. TP&W transferred those parcels before KJRC commenced the Feeder Line Application Proceeding. The Master Easement Agreement that forms the basis for Count XII was also executed before KJRC commenced the Feeder Line Application Proceeding. KJRC alleges that these attempted transfers were void, that TP&W in fact still owned these interests at the time that KJRC commenced the Feeder Line Application, and that the interests are part of the Line. The resolution of

this claim turns on the merits of KJRC's argument that transfers are void while an STB proceeding is pending.  The Court has subject matter jurisdiction to resolve the merits of KJRC's legal argument.  Therefore, the Court has subject matter jurisdiction with respect to these Counts as well as the others.  For all the reasons stated above, the Motion to dismiss for 1) lack of subject matter jurisdiction should be DENIED.

2) <u>Failure to State a Claim</u>

The Rule 12(b)(6) Motions turn on TP&W's ability to transfer property interests during a pending STB proceeding.  KJRC alleges that all of the transactions at issue in Counts IV through XII: (1) attempted to transfer interests in property in the Line; and (2) occurred during the pendency of a proceeding before the STB that affected ownership of the Line, either the SF&L Proceeding, the Abandonment Proceeding, or the Feeder Line Application Proceeding.  KJRC argues that during the pendency of an STB proceeding that relates to transfer of ownership of a rail line, all attempts to transfer interests in the subject rail line are void.  Therefore, KJRC alleges that all of the transfers at issue in Counts IV through XII are void, and TP&W still owned all of those interests in property at the time of the Decisions.  As a result, KJRC claims that TP&W is obligated to convey those interests to KJRC pursuant to the Decisions, but refuses to do so.

KJRC relies on a decision of the Sixth Circuit which states that all transfers during the pendency of an STB abandonment proceeding are void. Railroad Ventures, Inc., v. Surface Transportation Board, 299 F.3d 523 (6th Cir. 2002).  After careful consideration of Railroad Ventures, Inc., this Court concludes that a more accurate statement of the holding is that the purchaser, or an interested party, has the right to challenge such transfers and have them declared void during the proceeding.

In Railroad Ventures, Inc., the plaintiff (RVI) was trying to abandon a rail line.  The Columbiana County Port Authority (CCPA) made an Offer of Financial Assistance (OFA), essentially an offer to purchase the rail line through a forced sale proceeding before the STB.  See Id., at 531-36; 49 U.S.C. § 10904(f).   During the pendency of the proceeding, RVI entered into several transactions that conveyed interests in the rail line or encumbered the rail line.  RVI obligated the owner of the rail line to build an underpass and overpass, conveyed certain licenses and crossing rights, conveyed land to a local park district for a public park, entered into a contingent agreement to convey land for a bike trail, and conveyed the air and subsurface rights to an affiliated company.  Id., at 540-42.  The STB voided the transfer and air and subsurface rights, the conveyance of the land for the public park, and the obligation to build an underpass and

overpass; but, the STB did not void the transfer of certain licenses and crossing rights.  Id., at 544.

The Sixth Circuit affirmed the STB's decision.  The Sixth Circuit stated that the purchaser in an abandonment proceeding is entitled to decide the portion of the rail line that it wishes to purchase.  Id., at 555-56.  The Sixth Circuit further held that the seller must maintain the status quo of its interest in the designated portion of the rail line during the pendency of the proceeding, and any purported transfers of such interests during the pendency of the proceeding "are invalid."  Id., at 554.

The Sixth Circuit, however, did not find that all of RVI's purported transfers were void.  Rather, the Sixth Circuit affirmed the STB's decision not to void the transfer of certain licenses and crossing rights.  The Sixth Circuit explained that the purchaser, CCPA, did not challenge the STB's decision to allow these particular transfers,

> Because CCPA has not challenged the STB's approval of RVI's conveyance of certain property interests associated with a the rail line after RVI filed its abandonment petition, it is therefore unnecessary to remand for further proceedings since CCPA is not seeking to acquire those property interests not conveyed to it.

Id., at 556.  Thus, the Sixth Circuit recognized that the purchaser in a forced sale proceeding before the STB can acquiesce in the seller's transfer of some interests in property in the designated rail line during the

proceeding.  A transfer will not be void because it occurred during the
pendency of a force-sale proceeding if the purchaser (or some other
interested party in the proceeding) does not challenge the transfer during
the STB proceeding or on direct appeal or judicial review, or the STB does
not independently decide to void the transfer based on the proper exercise
of its regulatory authority.  Id.  This caveat to the Sixth Circuit's holding in
Railroad Ventures, Inc., promotes finality and certainty of title.  Otherwise,
strangers to the proceeding could challenge a purchaser's interest in the
property years later even if the purchaser was an unrelated third party who
had no knowledge of the pending STB proceeding and paid full value to the
seller.[16]

KJRC does not allege that any party challenged any of the transfers
set forth in Counts IV through XII during the pendency of any of the
proceedings before the STB or on direct appeal or judicial review; not the
SF&L Proceeding, the Abandonment Proceeding, the Petition for Alternate
Rail Service Proceeding, nor the Feeder Line Application Proceeding.
Thus, KJRC fails to allege that the transfers were void because of the
pending STB proceedings.  KJRC does not allege any other basis for

---

[16] For example, the creditors of the selling railroad company could attempt to force the sale of the
transferred property to satisfy the selling railroad company's debts, arguing that the selling railroad
company still owned the property because the purported transfer to the innocent purchaser was void by
operation of law.  If the selling railroad company later filed bankruptcy, the bankruptcy trustee could
possibly claim the property as part of the bankruptcy estate.  See 11 U.S.C. §§ 541, 544, 551.

challenging or voiding the transfers at issue on those counts.  Therefore,

KJRC fails to state a claim in Counts IV through XII.

The Court previously stated KJRC could state a claim for voiding

some of these transfers,

> KJRC alleges that TP&W attempted to frustrate the statutory
> forced sale process by engaging in transfers to entities related
> to TP&W. TP&W thereby allegedly wrongfully diminished or
> encumbered its interest in the Line to avoid transferring to
> KJRC the Original Interest in Property. Pursuant to §11704(a)
> and 28 U.S.C. § 2201, this Court can declare such wrongful
> transfers to be void in order to give full effect to the Decision to
> transfer the Original Interest in Property. Parties cannot be
> allowed to engage in such alleged subterfuges to frustrate the
> clear Congressional purpose to empower the Board to force the
> sale of railroad lines in the public interest.

January 2, 2013 Opinion, at 7-8.  This observation reflects this Court's

authority to provide equitable remedies to effectuate the Decisions.  If

TP&W engaged in inequitable conduct to circumvent the Decisions, then

this Court has the power to provide an equitable remedy, if appropriate

under the circumstances, such as voiding a transfer or imposing a

constructive trust to avoid unjust enrichment.  See generally Harris Trust

and Savings Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 250-51

(2000); Restatement (Third) of Restitution and Unjust Enrichment, §§ 44,

48 comment a., 55 (2011).  KJRC, however, has not alleged a claim for any

such remedy.  If KJRC has a basis for such a claim, it may seek leave to

replead.  Counts IV through XII of the Complaint as now drafted, however, fail to state a claim.[17]

WHEREFORE this Court recommends that Defendant Toledo, Peoria & Western Railway Corp.'s Motion to Dismiss Counts IV Through XII of Plaintiff's First Amended Complaint (d/e 38); Defendant San Pedro Trails, Inc.'s Motion to Dismiss Counts IV and V of Plaintiff's First Amended Complaint (d/e 61); Defendant Strong Capital's Motion to Dismiss Count XII (d/e 64); and Defendants Kenneth L. Dean, Nina S. Dean, Jeffrey F. Dean and Melissa A. Dean's Motion to Dismiss Count IX of Plaintiff's Frist Amended Complaint (d/e 71) should be ALLOWED, as Counts IV through XII of the First Amended Complaint (d/e 30) should be dismissed for failure to state a claim.  Defendants' collective 12(b)(6) motions should be ALLOWED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file a timely objection will constitute a waiver of

---

[17]TP&W and San Pedro Trails, Inc., argue that the Court should decline to exercise jurisdiction under the doctrine of primary jurisdiction.  This argument is moot at this time.  Should KJRC seek leave to replead, the Defendants may raise the issue again.

objections on appeal.  <u>See</u> <u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d

538, 539 (7th Cir. 1986).  <u>See</u> <u>Local Rule</u> 72.2.

ENTER:   September 9, 2013

_____*s/ Byron G. Cudmore*_____
UNITED STATES MAGISTRATE JUDGE